**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JEAN DITZLER,** | : |
| **Plaintiff** | :  **CIVIL ACTION NO. 3:14-70** |
| v. | :  **(JUDGE MANNION)** |
| **HOUSING AUTHORITY OF CITY OF NANTICOKE,** | : |
| **Defendant** | : |
| | : |

# M E M O R A N D U M

Pending before the court is the motion for summary judgment, (Doc. 21), of defendant Housing Authority of the City of Nanticoke ("NHA") on plaintiff's claims for violations of the First and Fourteenth Amendment based on political association. For the following reasons, the motion is **GRANTED.**

## I.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

By way of relevant background, on January 15, 2014, the plaintiff, Jean Ditzler, filed the instant action as a result of the defendant's decision to terminate the plaintiff from her employment as NHA Executive Director. (Doc. 1). The plaintiff served as Executive Director of the NHA from 2007 until January 19, 2011, when the NHA Board of Directors, upon recommendation from NHA Solicitor, Vito DeLuca, voted to terminate her employment on the basis of sixteen (16) listed complaints about her job performance, including insubordination and unsatisfactory job performance. (Doc. 22, Ex. D). In her

complaint, the plaintiff claims that pursuant to 42 U.S.C. §1983, she is entitled to relief because the defendant's decision to terminate her employment violated her First Amendment right of association. (Doc. 1, p. 7). Specifically, the plaintiff alleges that she "was not continued in her employment with Defendant upon the actions and recommendations of Mr. DeLuca in order to 'make room' for his political affiliate, Mr. Pape." *Id.* at ¶ 41.

On April 4, 2014, the defendant filed an Answer to the complaint along with several affirmative defenses, including failure to state a claim and failure to mitigate damages. (Doc. 10). While the parties began conducting discovery, the court referred the case to mediation pursuant to Standing Order 04-3, *In Re Authorizing Systematic Random Mandatory Mediation Referrals in Certain Case Types*, (July 26, 2004). (Doc. 14). A mediation conference was held, but the parties failed to successfully reach a settlement. (Doc. 16).

On May 1, 2015, the defendant filed a Motion for Summary Judgment, (Doc. 21), along with a supporting brief, (Doc. 23), and a Concise Statement of Material Facts pursuant to Local Rule 56.1. (Doc. 22). In response, the plaintiff filed a Brief in Opposition on June 8, 2015, (Doc. 24), along with her response to the defendant's Concise Statement of Material Facts and their Counterstatement of Material Facts. (Doc. 25). The defendant then filed a Reply Brief on June 22, 2015. And finally, the plaintiff submitted a motion to submit a Sur-Reply Brief, with which the Sur-Reply Brief was attached. (Doc. 27). Having received submissions from both parties, the court finds the

2

defendant's motion for summary judgment ripe for review.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995).

At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also* Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively

3

identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); *see also* *Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (*quoting* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23; Jakimas v. Hoffman-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

## III.  DISCUSSION

Plaintiff's complaint alleges that the defendant's termination of the plaintiff constitutes a violation of the plaintiff's right of association as guaranteed by the First and Fourteenth Amendments of the U.S. Constitution.

4

(Doc. 1, ¶ 49). In an attempt to demonstrate that no material issues of fact exist for trial and that it is entitled to judgment as a matter of law, the defendant filed the instant motion for summary judgment. The defendant argues that summary judgment is warranted on three grounds. First, the defendant claims that the plaintiff has not established a viable *Monell* claim against NHA. (Doc. 23, p. 3). Next, the defendant argues that there is no genuine dispute of fact contradicting the fact that the plaintiff's alleged constitutionally protected conduct was not a substantial factor in the defendant's decision to terminate her. *Id.* Finally, the defendant moves for summary judgment because the plaintiff cannot show pretext and the defendant's decision to terminate the plaintiff would remain the same absent the plaintiff's allegedly protected conduct. *Id.* at 3-4.

The plaintiff argues that she has, in fact, established a *Monell* claim against the defendant because the NHA ratified Mr. DeLuca's actions, and further claims that genuine disputes of facts relating to whether the plaintiff's constitutionally protected conduct was a substantial factor in her termination and whether the same decision would have been made absent such protected conduct preclude judgment as a matter of law. (Doc. 24, pp. 7, 14-15).

Each of the defendant's asserted grounds for summary judgment will be addressed in turn.

**A.**   ***Monell* Claim**

5

The defendant argues that it is entitled to judgment as a matter of law because the plaintiff has failed to establish a *Monell* claim against the NHA. (Doc. 23, p. 4).

To establish a claim under §1983, a person must prove that someone deprived him of a constitutional right while acting under the color of state law. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). Liability under §1983 is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or actual knowledge and acquiescence. *See* Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997) (overturned on other grounds) (*citing* Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Acquiescence exists where "a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so." Festa v. Jordan, 803 F. Supp. 2d 319, 325 (M.D. Pa. 2011) (*quoting* Robinson, 120 F.3d, at 1294).

A municipality or government entity is a "person" for purposes of §1983. *See* Bd. of the County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403 (1997) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 689 (1978)). But §1983 does not allow municipal liability under a theory of respondeat superior. *Id.* A municipality is not liable under §1983 merely for employing someone who violates a person's civil rights. The Third Circuit "require[s] a plaintiff seeking to impose liability on a municipality under

6

§1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury. Locating a 'policy' ensures that a municipality is held liable only for those [constitutional] deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Id.* at 403-04 (citing *Monell*, 436 U.S. at 694; Pembaur v. City of Cincinnati, 475 U.S. 469, 480-481 (1986); City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989)). The plaintiff bears the burden of identifying the policy or custom. *Id.* This rule ensures that a municipality will only be liable where it is the "moving force" behind the plaintiff's injury. *Id.*

In the complaint, the plaintiff alleges that the defendant, a government entity, is liable for violating the plaintiff's First Amendment right of association by terminating the plaintiff's employment "pursuant to a policy and custom of Defendant, inasmuch as Defendant was the final authority and ultimate repository of the Defendant's power in regard to the employment of Plaintiff." (Doc. 1, ¶ 46). The defendant argues that the plaintiff has pointed to no evidence to support a finding that the defendant had a policy or custom that violated the plaintiff's right of association. (Doc. 23, pp. 7-8). In support of such argument, the defendant misconstrues Third Circuit law and incorrectly posits that the plaintiff must demonstrate that the defendant's conduct amounted to "deliberate indifference" in order to establish a policy or custom

7

as required to impose *Monell* liability.[1] However, the plaintiff does not allege that the NHA is liable due to *Mr. DeLuca's* actions or for ratifying Mr. DeLuca's actions; on the contrary, the complaint plainly claims that the NHA is liable for the actions of its final decision-making body, the Board of Directors, and further alleges that the Board's decision to terminate the plaintiff's employment *directly* caused a deprivation of the plaintiff's First Amendment right of association. The facts and the supporting exhibits from both parties clearly demonstrate that the Board, not Mr. DeLuca, had the authority to terminate the plaintiff, and it was the Board, not Mr. DeLuca, who made the decision to do just that. (Doc. 22, Ex. M); (Doc. 22, Ex. D). The U.S. Supreme Court has stated, "it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986); *see also* Beck v. City of Pittsburgh, 89 F.3d 966 (3d Cir. Pa. 1996); Bartholomew v. Fischl, 782 F.2d

---

[1] The defendant cites to the Supreme Court case *City of Canton v. Harris* for the proposition that municipal liability requires a showing of "deliberate indifference." 489 U.S. 378, 388-89 (1989). However, the defendant misapplies the holding; *City of Canton* requires a showing of deliberate indifference on behalf of the municipality or municipal policymakers when the liability is premised upon the municipality's *failure to train* its employees. *Id.* ("Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."). Here, the plaintiff's claim is not based upon the defendant's failure to train, but rather the policymakers' decision to terminate the plaintiff's employment, and therefore, a showing of "deliberate indifference" is not required.

8

1148, 1154 (3d Cir. 1986) ("[I]t is possible that a 'single instance' of misconduct by a policymaking city official could provide the basis for an inference that a municipal policy existed."). The Supreme Court has further articulated this principle:

> No one has ever doubted, for instance, that a municipality may be liable under §1983 for a single decision by its properly constituted legislative body "whether or not that body had taken similar action in the past or intended to do so in the future" because even a single decision by such a body unquestionably constitutes an act of official government policy. *See, e.g.,* Owen v. City of Independence, 445 U.S. 622 (1980) (City Council passed resolution firing plaintiff without a pretermination hearing); Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981) (City Council canceled license permitting concert because of dispute over content of performance).

*Id.* In this case, the plaintiff has alleged that the NHA, a municipal entity, caused a constitutional deprivation by virtue of the NHA Board's decision to terminate the plaintiff's employment with the NHA. The parties do not appear to dispute the NHA Board of Directors' status as a policymaker and corresponding authority to hire and terminate employees, and the facts are undisputed that the Board voted to terminate the plaintiff's employment on January 19, 2011. (Doc. 22, Ex. D); (Doc. 22, Ex. M); (Doc. 22, ¶¶ 39-40); (Doc. 25, p. 12). This single decision by policymakers comports with Supreme Court and Third Circuit precedent and clearly amounts to "an act of official government policy." This court finds that the plaintiff has provided evidence sufficient to support a finding that the Board's deliberate decision to terminate the plaintiff qualifies as policy for the purpose of determining *Monell* liability,

and, as a result, will deny the defendant's motion for summary judgment on this ground. *Monell* liability may, therefore, attach if the Board's decision to terminate the plaintiff *caused* a violation of her First Amendment right of association, which will be discussed below.

**B.    Substantial or Motivating Factor**

The defendant claims that it is also entitled to summary judgment because "there is no genuine dispute of material fact contradicting that the Plaintiff's allegedly constitutionally protected conduct . . . was not a substantial factor in the decision to terminate her from employment." (Doc. 23, p. 9). The defendants, thus, claim that the plaintiff has failed to satisfy an element required to establish a constitutional injury in this context, and therefore, the municipal entity, the NHA, may not be held liable under *Monell*.

The Third Circuit Court of Appeals formulated a three-part test to establish a claim of discrimination based on political patronage. In order to successfully establish a *prima facie* case, a plaintiff must demonstrate the following three elements: "(1) she was employed at a public agency in a position that does not require political affiliation, (2) she was engaged in constitutionally protected conduct, and (3) this conduct was a substantial or motivating factor in the government's employment decision." Galli v. New Jersey Meadowlands Comm'n, 490 F.3d 265, 271 (3d Cir. 2007). The defendant does not contest the first and second prong of the test, but reserves the right to challenge these prongs in the future. (Doc. 23, p. 10 n.4).

The defendant, does, however, contest the third prong and asserts that the plaintiff's political association or lack thereof was not a substantial or motivating favor in the Board's decision to terminate the plaintiff. (Doc. 23, p. 11). "Implicit in [the third] prong is a requirement that the plaintiff produce sufficient evidence to show that the defendant knew of the plaintiff's political persuasion, which requires proof of both knowledge and causation." Galli v. N.J. Meadowlands Comm'n, 490 F.3d 265, 275 (3d Cir. 2007) (internal quotation and citation omitted); *see also* Wallett v. Pa. Tpk. Comm'n, 528 Fed. Appx. 175, 178 (3d Cir. 2013). Here, the plaintiff's claim for discrimination is based on the fact that she was not politically affiliated with NHA Solicitor DeLuca, and "declin[ed] to give allegiance to the various public officials, political parties, political personages and political factions in power in Luzerne County." (Doc. 4, ¶¶ 27-28). More specifically, the plaintiff posits that her termination was politically motivated because NHA Solicitor DeLuca wanted his "political supporter and ally," Douglas Pape, to take her position. (Doc. 24, p. 14).

The plaintiff provides the court with an abundance of evidence regarding DeLuca's actions, and this evidence is sufficient to lead a jury to believe that *DeLuca* knew that the plaintiff was not his political ally, that Pape was his political supporter and ally, and that his conduct was, therefore, politically motivated. This evidence includes testimony regarding a discussion where DeLuca suggested Pape consider being Executive Director of the NHA, which

11

occurred in December of 2011 prior to the plaintiff's termination and weeks before Pape would lose his job with Luzerne County. (Doc. 22, Ex. B, pp. 21-22); (Doc. 25, Ex. A, p. 379). The plaintiff also provides evidence demonstrating that DeLuca and Pape had a close relationship dating back to 2008, and further that Pape provided political support for DeLuca in his 2011 campaign to become a judge. (Doc. 22, Ex. F, pp. 57-59). The plaintiff also notes that DeLuca called Pape the night of or day after the plaintiff's termination, and that he contacted the Board and recommended only Pape for the position without posting the position to the public. (Doc. 22, Ex. F, p. 76); (Doc. 22, Ex. J, pp. 86-88); (Doc. 22, Ex. G, pp. 41-42); (Doc. 22, Ex. I, p. 37). The plaintiff further provides evidence demonstrating that the procedures used to hire Pape were not in accordance with Civil Service Procedures because the position was never posted and Pape has yet to take the Civil Service Examination. (Doc. Ex. F, p. 76); (Doc. 22, Ex. B, p. 46). Finally, the plaintiff presents evidence showing that Pape was hired on an emergency basis as Interim Director, and that he had little to no experience with the NHA or specific housing issues. (Doc. 22, Ex. B, p. 43). The conversations and historical relationship between DeLuca and Pape, the temporal proximity of the plaintiff's termination and Pape's hiring, and the lack of usual, adequate hiring procedures support a finding that DeLuca's recommendation and conduct may have been politically motivated. Furthermore, taken together, these facts are sufficient to satisfy the knowledge and causation elements and

12

lead a jury to infer that *DeLuca's* actions were politically motivated.

While the plaintiff provides significant evidence regarding *DeLuca's* actions and knowledge, she, unfortunately, provides no evidence that the *Board members* had any knowledge of the plaintiff's political affiliation, Pape's political affiliation, or DeLuca's political motivations. The defendant, on the other hand, provides the court with an abundance of evidence showing that the Board lacked the requisite knowledge. The defendant presents evidence showing that each member of the Board that voted on the plaintiff's termination had *no knowledge* of DeLuca's alleged political motivations. (Doc. 22, Ex. J, p. 86, 88) (Hudak Deposition in which she states she did not know Pape and had no knowledge of his political connection to DeLuca); (Doc. 22, Ex. G, p. 43) (Prushinski deposition in which he states the same); (Doc. 22, Ex. H, pp. 36-40) (Bashista deposition stating she knew nothing of Pape's political affiliation with DeLuca).[2] Furthermore, the defendant presents evidence showing that the Board did not know Pape's name or his interest in the position until after the plaintiff was terminated, and further that once DeLuca suggested Pape, DeLuca did not participate in the hiring or decision-

---

[2] The defendant also alleges that the fourth board member, Ms. Centurione, stated that she did not know Pape or his political affiliation during her deposition, but the pages referenced by the defendant are missing from the exhibit attached for the court's review. (Doc. 22, Ex. I). Because Ms. Centurione abstained from voting on the plaintiff's termination, this information has no bearing on whether the Board knew about alleged political motivations and voted under such circumstances.

making process. (Doc. 22, Ex. J, p. 86); (Doc. 22, Ex. F., p. 125); (Doc. 22, Ex. B, pp. 91-93); (Doc. 22, Ex. G, p. 41). The defendant's evidence shows it was the *Board* that interviewed and made the decision to hire Pape on an interim, emergency basis. (Doc. 22, Ex. J, pp. 85-87); (Doc. 22, Ex. B, pp. 91-93).

Ultimately, while the evidence presented by the plaintiff does present a genuine dispute of fact as to whether Solicitor DeLuca's actions were politically motivated, DeLuca is not a named defendant in this case. This case is against the NHA, and in order to prevail, the plaintiff has the burden of showing that the NHA, or its policymakers (here, the Board), had knowledge of the political motivations or the plaintiff's political affiliation, and that such knowledge coupled with their actions to terminate the employee caused a constitutional deprivation. The plaintiff has failed to show that the Board Members had any knowledge regarding the political affiliation of the plaintiff herself and Douglas Pape, and further has failed to make a showing or create a genuine dispute of material fact as to the Board's knowledge of Solicitor DeLuca's alleged political motivations. The plaintiff mistakenly focuses her arguments entirely on Solicitor DeLuca's actions and knowledge, and fails to address the more relevant inquiry regarding the Board. The defendant, on the other hand, has provided evidence to support a finding that the Board members did not have the requisite knowledge to support the "substantial or motivating factor" prong, as required to prove a claim for political patronage.

Each piece of evidence presented by the defendant to support the Board's lack of knowledge, as listed above, is undisputed by the plaintiff. *See* Doc. 25, pp. 15-16, ¶¶ 55, 58-61.[3] The court, therefore, finds that there is no genuine dispute of material fact as to the Board's lack of knowledge of the alleged political motivations leading to the plaintiff's termination from employment.[4]

---

[3] In the her response to the defendant's Concise Statement of Material Facts, the plaintiff allegedly disputes "when the board was actually informed about Mr. Pape." (Doc. 25, p. 15, ¶ 55). The plaintiff fails to provide or cite to any evidence that rebuts the defendant's statement that DeLuca "provided Mr. Pape's name to the NHA Board after a decision was made to terminate the Plaintiff." (Doc. 22, ¶ 55 (citing Ex. F)). Instead, the plaintiff argues that this fact rests upon the "credibility of an interested witness," and thus, should be disregarded at this stage. The court finds this argument unpersuasive, because the Third Circuit has clearly held, "in considering a motion for summary judgment the court should believe uncontradicted testimony unless it is inherently implausible even if the testimony is that of an interested witness." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 272 (3d Cir. 2007). We are bound by and agree with the rationale set forth in *DeFlaminis*, and conclude that refusing to consider uncontradicted evidence by the moving party "would allow the non-moving party to defeat the motion with mere allegations." *Id.* at 272 n.13. In this case, we conclude that the plaintiff does not create a genuine dispute as to when the Board was informed about Pape.

[4] Even if the court analyzed *Monell* liability on a theory that the policymakers 1) knew and acquiesced, or 2) ratified Solicitor DeLuca's alleged politically motivated, unconstitutional conduct, the plaintiff would still be required to demonstrate that the Board members had the requisite knowledge. *See* Festa v. Jordan, 803 F. Supp. 2d 319, 325 (M.D. Pa. 2011) (quoting Robinson, 120 F.3d, at 1294) (stating that acquiescence exists where "a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so."); City of St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S. Ct. 915, 926, 99 L. Ed. 2d 107 (1988) ("If the authorized policymakers approve a subordinate's decision *and the basis for it*, their ratification would be chargeable to the municipality because their decision is final." (emphasis added)). Since the plaintiff fails to provide any evidence to create a genuine dispute of fact as to the Board's knowledge, the analysis would not change

Because the knowledge requirement is not satisfied, the plaintiff cannot prove that her constitutionally protected conduct was a substantial or motivating factor in the government's employment decision and as a result cannot establish a *prima facie* case. The defendant's motion for summary judgment will, therefore, be granted.

**C.    Pretext Analysis**

The defendant's final argument in support of summary judgment rests on whether the NHA's decision to terminate the plaintiff's employment was pretextual and whether the decision would have been made regardless of the plaintiff's political affiliation. (Doc. 23, pp. 14-15). The defendant argues that there was "no animus" and the same decision would have been made "no matter what the Plaintiff's political affiliation was," because termination was based upon sixteen instances of misconduct (verified by a forensic audit). *Id*. The plaintiff, on the other hand, states that the decision was pretextual pursuant to *Fuentes v. Perskie*, 32 F.3d 759 (1994), and identifies evidence that she claims discredits the defendant's legitimate reason for termination and refutes the argument that the same decision would have been made regardless. (Doc. 24, pp. 18-19).

Ultimately, both parties arguments rest upon the applicability of the Supreme Court's holding in *Fuentes*. The United States Supreme Court in

---

even if the court applied the abovementioned theories of supervisory liability.

*Fuentes* held that, in Title VII employment discrimination cases, to "defeat summary judgment when the defendant answers the plaintiff's *prima facie* case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). This holding is based upon the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), which essentially stated that a plaintiff in a Title VII discrimination case carries the initial burden of establishing a *prima facie* case of discrimination. Id. Once the plaintiff proves his *prima facie* case, the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id. If the employer satisfies this burden, the burden of production returns to the plaintiff, who must show by competent evidence that the employer's reason(s) for rejection were pretextual. Id. at 804-05.[5] While the abovementioned burden-shifting

---

[5] The Supreme Court further affirmed this framework and synthesized the sequence in *Texas Dep't of Cmty. Affairs v. Burdine*.:
> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then

17

framework was set forth in the context of Title VII, the Supreme Court has stated that the framework applies to section 1983 actions, and the Third Circuit has applied it to section 1983 discrimination cases. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993) (assuming the *McDonnell Douglas* framework applies to 42 U.S.C. §1983 claims); Stewart v. Rutgers, The State Univ., 120 F.3d 426, 432 (3d Cir. 1997) (finding the *McDonnell Douglas-Burdine* framework applicable to racial discrimination under 42 U.S.C. §1983); Mieczkowski v. York City Sch. Dist., 414 Fed. Appx. 441, 445 (3d Cir. 2011) (not precedential); Moussa v. Pennsylvania Dep't of Pub. Welfare, 413 Fed. Appx. 484, 486 (3d Cir. 2011) (not precedential); Wheeler v. Twp. of Edison, 326 Fed. Appx. 118, 121 (3d Cir. 2009) (not precedential).

The Third Circuit, in *Wheeler v. Township of Edison*, applied the burden-shifting framework in a section 1983 political patronage discrimination case that is similar to the instant case, and is relevant to the court's analysis. While *Wheeler* is a non-precedential case and therefore non-binding authority, this court finds its rationale and application of the burden-shifting framework extremely persuasive. The *Wheeler* Court addresses and resolves precisely how the *McDonnell Douglas-Burdine* framework and the recent holding in

---

      have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." (internal quotation and citation omitted)).
450 U.S. 248, 252-53 (1981).

*Fuentes* apply to political patronage claims:

> Political discrimination cases employ similar, though not identical, burden-shifting mechanisms as those used in other employment discrimination contexts, such as Title VII cases. *See* Stephens v. Kerrigan, 122 F.3d 171, 176 (3d Cir. 1997). First the plaintiff must make out a prima facie case. We apply a three-part test to establish a prima facie political patronage claim. The plaintiff must show that (1) she was employed at a public agency in a position that does not require political affiliation, (2) she was engaged in constitutionally protected conduct and (3) this conduct was a substantial or motivating factor in the government's employment decision. Galli v. New Jersey Meadowlands Comm'n, 490 F.3d 265, 271 (3d Cir. 2007).
>
> Once the plaintiff has made this prima facie case, the employer may avoid liability by proving, by a preponderance of the evidence, that the same employment actions would have been taken even in the absence of the protected activity. *Stephens*, 122 F.3d at 176. Once the employer has articulated a nondiscriminatory reason for the employment action, the plaintiff may still prevail by discrediting that proffered reason, either circumstantially or directly, or by proving that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. *See Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994)."

Wheeler v. Twp. of Edison, 326 F. App'x 118, 121 (3d Cir. 2009) (not precedential). The first requirement, as set forth in *Wheeler*, is that the plaintiff establish a *prima facie* case, which requires satisfaction of three listed elements. As discussed in detail above, the plaintiff has failed to provide evidence that establishes the third element–that the NHA's conduct was a substantial or motivating factor in the government's employment decision–because she has provided no facts to demonstrate the Board's knowledge of alleged political affiliations or motivations. Thus, having found

19

that she fails to establish a *prima facie* case, the court need not conduct any further analysis or continue on to the next steps of the *McConnell Douglas-Burdine* framework. The court need not consider whether the employer has legitimate reasons for its employment decision and whether it would have taken the same action regardless of the plaintiff's political affiliation. Nor must the court consider the plaintiff's arguments seeking to discredit each of the employer's reasons for termination.

Ultimately, the plaintiff failed to establish her claim, and the inquiry stops at that point. The defendant is therefore entitled to judgment as a matter of law on the ground that the plaintiff failed to create a genuine dispute as to the Board's knowledge of political motivations behind DeLuca's recommendation.

## IV. CONCLUSION

In light of the foregoing, defendant's motion for summary judgment, (Doc. 21), is **GRANTED.** A separate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: March 21, 2016**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-0070-01.wpd